[Civ. No. 11382.   Second Appellate District, Division One.—April 27, 1938.]

TITLE INSURANCE AND TRUST COMPANY (a Corporation), Appellant, v. BANDINI ESTATE COMPANY (a Corporation), Respondent.

Arch H. Vernon, Earl E. Johnson and Gilbert E. Harris for Appellant.

U. T. Clotfelter and L. W. Butterfield for Respondent.

WHITE, J.—This is an action brought by plaintiff to recover judgment against defendant as the indorser of certain promissory notes secured by a deed of trust covering real estate in Los Angeles County. Plaintiff sought to recover the amounts remaining due on the notes after the security had been exhausted through a trustee's sale.

Defendant demurred both generally and specially to the amended complaint filed herein, and this appeal is prosecuted from the judgment entered after an order made by the court below sustaining defendant's demurrer without leave to amend.

The transaction by which the notes involved were issued is one in which the defendant negotiated a sale of certain real estate owned by it to O. Nicholas Gabriel and Associates for the purpose of creating a subdivision trust to subdivide the property and sell it in lots at retail. Part of the purchase price was paid in cash and the remainder was to be paid out of the proceeds of the sale of lots after such subdivision. The amended complaint alleges:

"That said O. Nicholas Gabriel and Associates desired and requested that the unpaid portion of said purchase price of said real estate be secured by a payee's interest under said trust declaration; that said Arcadia Bandini Baker Estate Company refused so to do, and insisted that, if they had 'to take the land back', they wished to get it back in a definite and certain form, so that they could get title quickly, and insisted that a note and deed of trust be exe-

.cuted by a person designated to act as dummy, evidencing the unpaid portion of the purchase price of said real estate.''

The trust declaration was prepared accordingly and expressly provided that the sole remedy against any persons interested in the property should be as provided in the declaration of trust, namely, by the application of release prices of lots sold under the unpaid purchase price, and as provided in the deed of trust executed by such ''dummy''. From the foregoing it is apparent that respondent took the position of a creditor with a first lien and did not enter into a joint venture with the purchaser.

The transaction was consummated and the property was conveyed to the trustee subject to a deed of trust securing five promissory notes for $153,977 each, dated December 15, 1923, bearing interest at the rate of six per cent, one due January 1, 1926, and one due on the first day of January of each year thereafter to and including January 1, 1930. Two of the promissory notes were paid promptly when due, but in April, 1927, a change in selling conditions of such subdivisions came about, so as to make it quite probable, if not certain, that the remaining promissory notes could not be paid when due out of the sales of the lots. Confronted with this situation, the subdivider applied to respondent for an extension of time, which application was refused. Then the subdivider requested respondent to sell the notes, so that the assignee of them could grant such extension. In response to this request, respondent, under date of June 15, 1927, wrote appellant, making an offer to the latter to sell the notes, which writing was in words and figures as follows:

''Mr. O. Nicholas Gabriel, the Manager for the Beneficiaries under the above Trust, has applied to the undersigned to sell the three notes remaining unpaid, in order that the purchaser thereof may extend the maturity dates to July 1, 1932. Complying with his request, *we hereby offer to assign, transfer and set over unto your Company, or its nominee, all of our right, title and interest in and to said notes and in and to the said Trust Deed securing the same,* upon payment to us of the foregoing total unpaid principal balance of $461,-900.00, plus accrued interest from June 15, 1927, to date of payment, less a discount equal to 5% of said unpaid principal balance, said discount amounting to $23,095.00, making the

net amount payable to us for said assignment the sum of $438,805.00, plus said accrued interest.

"The undersigned hereby respectfully requests that your company arrange for the purchase of said notes on the above basis.

"This offer shall remain open for a period of thirty days from the date hereof. If the said notes are not purchased by you pursuant to the above provisions within that period, then this offer shall be null and void at the expiration of said thirty day period." (Italics added.)

On June 16, 1927, respondent placed the notes in escrow with appellant, with instructions authorizing delivery thereof upon receipt of the amount of money specified in the offer, and on the next day appellant placed the requisite amount of money in said escrow, with instructions that it be paid over to respondent for said notes "transferred and assigned to Title Insurance and Trust Company by the payee as of the date of June 17th, 1927". There were three promissory notes transferred, and upon the back of each were the words and figures following:

"Los Angeles, California
"June 17, 1927.

"For Value Received we do hereby transfer and assign to Title Insurance and Trust Company the within note, together with all rights accrued or to accrue under the deed of trust securing the same so far as the same relate to this note.

" (Corporate Seal)
"ARCADIA BANDINI BAKER ESTATE COMPANY.
"By JOHN T. GAFFEY, Pres.
" (Signed)
"By W. H. WILCOX, Secy.
" (Signed) "

Appellant first contends upon this appeal that respondent was a general indorser and not a qualified indorser of the notes in question. The applicable sections of the Negotiable Instruments Law read as follows:

"A qualified indorsement constitutes the indorser a mere assignor of the title to the instrument. It may be made by adding to the indorser's signature the words 'without recourse' or any words of similar import. Such an indorse-

ment does not impair the negotiable character of the instrument." (Sec. 3119, Civ. Code.)

"A person placing his signature upon an instrument otherwise than as maker, drawer, or acceptor, is deemed to be an indorser, unless he clearly indicates by appropriate words his intention to be bound in some other capacity." (Sec. 3144, Civ. Code.)

Respondent concedes that the bare wording of the assignment upon the notes here involved, standing alone, constitutes a general indorsement under the authorities cited by appellant, and it is not disputed that an assignment reading in substance, "I hereby assign the within note", standing by itself, is an unqualified indorsement; but respondent earnestly urges that in this case these words do not stand alone, but that the allegations of the amended complaint and the record before the court show that the transfer of the notes here involved was made in pursuance of an express and specific contract between the appellant and respondent to assign only respondent's "right, title and interest in and to the notes", and that the actual agreement and intention of the parties was that the notes would be transferred without recourse; that the appellant having pleaded not only what it calls the indorsement of the notes, but the actual contract between the parties pursuant to which the transfer of the notes was made and all the facts and circumstances leading up thereto, there is created an ambiguity as to the meaning of the so-called indorsement which entitles the court to look into, consider and give effect to all of the facts and circumstances surrounding the alleged indorsement and appearing on the face of the amended complaint, to ascertain from such allegations the intention of the parties in the making and acceptance of the alleged indorsement. (Secs. 1856, 1860, Code Civ. Proc.)

It needs no citation of authority for the statement that in the case of a blank indorsement or an indorsement without limitation, qualification or restriction, oral testimony or other evidence of negotiations leading up to the execution of a written agreement is inadmissible to show any agreement between the indorser and the indorsee of a promissory note that the note was to pass without recourse, because section 1639 of the Civil Code definitely provides that when a contract is reduced to writing the intention of the parties

is to be ascertained from the writing alone, if possible; subject, however, to certain provisions of the Civil Code. In ruling upon the demurrer, the court below had a right to take into consideration all of the averments and allegations contained in the amended complaint, and if from a consideration thereof there appears an "extrinsic ambiguity" in the wording of the indorsement, recourse may be had to those portions of the amended complaint which set forth the circumstances under which the indorsement was made, the situation of the subject of the instrument and of the parties to it. ██ In the instant case, the trial court had before it the allegations contained in the amended complaint that the transfer of the notes in question was made pursuant to a written specific offer made by respondent to appellant under date of June 15, 1927, and by which offer respondent agreed to assign, transfer and set over unto appellant or its nominee, all of the "right, title and interest in and to said notes and in and to the said trust deed securing the same", and which words just quoted constituted a qualified indorsement, making the indorser a mere assignor of the title to the instruments. (*Cristina* v. *Mattenberger*, 212 Cal. 670 [300 Pac. 450]; *Hammond Lumber Co.* v. *Kearsley*, 36 Cal. App. 431 [172 Pac. 404].) By the amended complaint the court was also apprised of the fact that respondent sold the notes to the appellant at a discount. It must also be borne in mind that the court had before it and could draw inferences as to the intention of the parties from the allegations contained in the amended complaint that prior to the transfer of the notes in question from respondent to appellant, the former had been asked to consent to an extension of time for payment and refused such request. In the face of such refusal, coupled with the transfer of the notes to appellant at a discount, it hardly seems reasonable to infer, from the course of business, that such transfer would be made coupled with an assumption of an obligation to make payment of the notes in full in case the maker failed to do so. (Sec. 1960, Code Civ. Proc.) That appellant accepted the offer of respondent to transfer the notes with a limited indorsement is evidenced by the averments in the amended complaint that appellant received and accepted the notes in strict compliance and conformity with the terms and provisions of respondent's offer as contained in its letter of June 15th.

The court was entitled to consider all of the allegations contained in the amended complaint to indicate and show the intention of the indorser and for the purpose of placing a proper construction upon the indorsement in dispute. When considered in their entirety, the allegations of the amended complaint clearly indicate and prove that respondent's indorsement on the back of the promissory notes did not make it a general indorser, but that said indorsement was qualified, that is, that it was a mere assignment for the purpose of transferring the interest or title of respondent to appellant, and that respondent was a qualified indorser without recourse of payment. The court below was therefore correct in sustaining the demurrer without leave to amend upon the ground that the amended complaint failed to state facts sufficient to constitute a cause of action on the part of appellant against respondent.

In view of the foregoing, no other points raised demand our consideration.

The judgment is affirmed.

York, P. J., and Doran, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 25, 1938, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 23, 1938.